IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**JAMES A. FANNINGS JR.**                                                                        **PETITIONER**

**V.**                                                        **NO. 4:18-CV-193-DMB-JMV**

**STATE OF MISSISSIPPI**                                                     **RESPONDENT**

## MEMORANDUM OPINION

James A. Fannings, Jr. filed a petition for a writ of habeas corpus challenging his murder conviction in state court. Because all the claims raised in Fannings' petition are either procedurally defaulted or without merit, his petition will be denied.

## I
## State Court Procedural History

On November 30, 2006, following a jury trial, James A. Fannings, Jr. was convicted of murder in the Circuit Court of Bolivar County, Mississippi, and sentenced to life imprisonment without parole.[1] Doc. #17-1 at PageID 209–11. With the assistance of counsel, Fannings appealed his conviction to the Mississippi Court of Appeals. Doc. #17-8 at PageID 1059. The appeal raised six issues:

> (1) whether the trial court erred in failing to grant a judgment notwithstanding the verdict (JNOV) due to the insufficiency of the evidence to support the charge of murder; (2) whether the trial court erred in not granting a JNOV due to the sufficiency of the evidence to support only the charge of manslaughter; (3) whether the trial court failed to advise [Fannings] of his right to testify; (4) whether he received ineffective assistance of counsel; (5) whether he was improperly sentenced; and (6) whether the cumulative effect of these errors warrants reversal.

*Fannings v. State*, 997 So. 2d 953, 955 (Miss. Ct. App. 2008). The Mississippi Court of Appeals affirmed Fannings' conviction and sentence on December 16, 2008. *Id.* Although Fannings,

---

[1] Fannings is currently in the custody of the Mississippi Department of Corrections ("MDOC") at the East Mississippi Correctional Facility. *See* Doc. #39.

acting pro se, subsequently sought rehearing, his motion for rehearing was denied as untimely.[2] Doc. #17-7 at PageID 925.

On October 20, 2009, Fannings filed in the Mississippi Supreme Court a pro se "Application for Post-Conviction Relief or, in the Alternative, Leave to File Motion to Vacate Judgement and Sentence, in the Circuit Court." Doc. #17-9 at PageID 1472–82. However, because the filing did not comply with the Mississippi Uniform Post-Conviction Collateral Relief Act, the Mississippi Supreme Court ordered it be returned to Fannings and advised Fannings that any future filings must comply with the Act. *Id.* at PageID 1468–69.

Over two years later, on December 9, 2011, Fannings filed "Petitioner's Application for Leave to Proceed in the Trial Court Pursuant to Mississippi Code §99-39-7," along with the motion he sought to file and an accompanying memorandum. *Id.* at Page1441–64. Fannings argued he was "denied his right to effective assistance of trial and appellate counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and tried by a biased judge in violation of the Due Process clause of the Fourteenth Amendment." *Id.* at PageID 1441. Specifically, Fannings argued his trial counsel "failed to raise any sort of defense" because he did not call any witnesses or introduce any evidence, did not conduct a proper investigation, and "failed to act on apparent prejudice by the judge after the verdict when he hugged [the victim's] parents and said that he told them that he would give them justice." *Id.* at PageID 1441–42. He argued his appellate counsel was also ineffective "for failing to take action based on the expressed judicial prejudice" and for failing to address "the denial of a continuance in a motion for a new trial." *Id.* at PageID 1442. Upon review, the Mississippi Supreme Court found "Fannings' claims

---

[2] The Mississippi Court of Appeals also denied Fannings' motion for reconsideration of the denial of rehearing. Doc. #17-7 at PageID 918.

2

that the trial judge was biased were without merit" and that his claims of ineffective assistance of counsel "fail[ed] to meet both prongs of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)." *Id.* at PageID 1431. Accordingly, the Mississippi Supreme Court denied his application for leave to proceed in the trial court on February 22, 2012. *Id.*

On July 15, 2015, Fannings filed in the Mississippi Supreme Court a "Motion for Leave to File Post Conviction Relief in Circuit Court." Doc. #17-10 at PageID 1543–55. Fannings challenged the legality of his life sentence without parole. *Id.* at PageID 1544–45. In light of *Parker v. State*, 30 So. 3d 1222 (Miss. 2010), the Mississippi Supreme Court granted Fannings' motion and allowed him to file his petition in the Bolivar County Circuit Court by December 7, 2015. *Id.* at PageID 1526. Fannings filed the motion in the Circuit Court on November 3, 2015. Doc. #16-3 at PageID 119–31.

Before the Circuit Court took any action on his illegal sentence motion, Fannings filed in the Mississippi Supreme Court another application for leave to file a subsequent motion for post-conviction relief. Doc. #17-10 at PageID 1515–22. But because the application was "time barred and barred as a successive writ" and because Fannings failed "to raise an arguable basis for his claims to warrant an exception from the procedural bars," his application was dismissed. *Id.* at PageID 1513–14.

On January 10, 2018, the Circuit Court entered an order vacating Fannings' life sentence without parole and sentencing him to life imprisonment. Doc. #16-4. Fannings again filed an application for leave to proceed in the trial court with a successive post-conviction relief motion. Doc. #17-10 at PageID 1492–1500. The Mississippi Supreme Court again dismissed his application as procedurally barred. *Id.* at PageID 1490–91.

3

## II
## Federal Court Procedural History

On or about September 19, 2018, Fannings filed a petition for a writ of habeas corpus in the United States District Court for the Northern District of Mississippi. Doc. #1. Fannings raises five grounds in the petition: "Ground One: Expressed Judicial Prejudice and Judicial Misconduct;" "Ground Two: Chavon Mack, State only alledge [sic] eye witness and confessor;" "Ground Three: Whether the State Proved the elements of murder and if Fannings should have been charged with manslaughter or convicted at all;" "Ground Four: Whether Fannings suffered a miscarriage of Justice or In fact an [sic] plain error within his trial and case;" and "Ground Five: Ineffective assistance of trial Counsel." *Id.* at 2–4.

On January 18, 2019, United States Magistrate Judge Jane M. Virden ordered the State to file an answer no later than April 3, 2019. Doc. #7. Then, on or about January 22, 2019, Fannings filed a motion to amend his petition to challenge the denial of parole consideration by MDOC. Doc. #9. Judge Virden granted the motion and deemed the petition amended as of the date of filing. Doc. #10. On or about March 12, 2019, Fannings filed a second motion to amend his petition, asserting that "the conduct of the Courts [in a separate state court civil action against one of his former attorneys] is questionable and yet unjustifiable" and seeking to use documents from the case as exhibits to his petition. Doc. #13. Two weeks later, Fannings submitted an additional document from the state court civil action for consideration. Doc. #14. Judge Virden again granted the motion to amend. Doc. #15. On April 3, 2019, the State answered the petition, addressing Fannings' arguments in his original petition and the subsequent amendments. Doc. #16.

On or about April 9, 2019, Fannings filed a "Motion to Produce Facts of Claims." Doc. #19. The same day, he filed a "Motion to Set Aside Conviction and Sentence," Doc. #20, which Judge Virden "construed … liberally" as a motion to amend and denied because "the State ha[d]

4

answered the petition, and the petitioner's request d[id] not add anything to the substance of his claims,"[3] Doc. #22 at PageID 1634 & n.1.  Similarly, after construing Fannings' "Motion to Produce Facts of Claims" as a motion to expand the record, Judge Virden denied the request because "[a]t th[at] stage of proceedings, the court c[ould ]not determine whether expanding the record would be necessary."  Doc. #23 at PageID 1635 & n.1.

Fannings filed a "Motion to Request Discovery and Request for the Admission of Documents" on or about July 21, 2021, seeking to obtain a "Fugitive from Justice Warrant and Affidavit" from the Bolivar County Sheriff Department.  Doc. #31.  Fannings contended the documents "w[ould] show … factual evidence of not only [his] unlawful arrest but also the unlawful conviction, sentence and detainment."  *Id.* at 1.  Because the "existence of such a warrant d[id] not touch on any claims the petitioner has made in this case," Judge Virden denied the motion.  Doc. #41.

On or about August 30, 2021, Fannings filed a "Motion for Counsel Assistance," asserting that "[t]here [wa]s a widespread interest that present[ed] a significant and novel question of Constitution [sic] and law in [his] Arrest, charge, conviction, sentence, and detainment" which was "beyond the scope of his pro se litigation" and that he needed "counsel assistance to retrieve other factual files, documents, and merits in this matter."[4]  Doc. #32.  Approximately five weeks later, Fannings filed a motion asking the Court to rule on the motion for counsel.  Doc. #35.  Finding that "an evidentiary hearing w[ould] not be necessary in this case, and the petitioner ha[d] not

---

[3] After the entry of Judge Virden's order, Fannings sent additional documents to the Court which appear to be an attempt to further amend his petition.  Docs. #26, #27, #30, #34.

[4] Fannings also filed a "Summary with Supportive Documents" in support of his motion for counsel.  Doc. #33.

5

alleged the existence of any circumstances which would … require appointment of counsel at th[at] time," Judge Virden denied both motions.[5]  Doc. #42.

Fannings filed a "Motion of Declaration in Support of 2254 Habeas Corpus Petition and Facts" on or about November 18, 2021.  Doc. #37.  The motion includes eleven exhibits Fannings seeks to add to his petition and challenges the validity of the warrant for his initial arrest.  Docs. #37-1 to #37-11.

On or about January 12, 2022, Fannings filed a "Motion for Preliminary Relief" asking the Court to order that he be "housed back at the Bolivar County Reginal [sic] Correctional Facility" "pending the outcome of [his] habeas corpus decision" to "protect [his] rights, allow [him] to seek adequate counsel in this cause, and protect [him] from life threatening acts that manifests within the custody of M.D.O.C."  Doc. #40 at 1, 3, 5.  Fannings also makes claims regarding his safety and the conditions of his confinement.  *Id.* at 4.

## III
## Procedural Considerations

The State asserts that "the claims in the instant Petition would arguably be time-barred" and that certain claims are unexhausted and now procedurally defaulted.  Doc. #16 at 2 n.2, 12–17.

### A. Timeliness

Under 28 U.S.C. § 2244(d)(1), a one-year period of limitation applies to federal habeas petitions challenging the judgment of a state court.  Except in circumstances inapplicable here, the limitation period begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).

---

[5] The denial was "without prejudice to [Fannings'] right to move for appointment of counsel should circumstances arise which require such an appointment in the interests of justice."  Doc. #42.

The United States Supreme Court established in *Burton v. Stewart* that under § 2244(d)(1)(A), the limitations period does not begin until both the conviction *and* sentence become final. 549 U.S. 147, 156–57 (2007).

Although Fannings' original conviction and sentence were affirmed by the Mississippi Court of Appeals on December 16, 2008,[6] Fannings was resentenced on January 10, 2018, after his successful post-conviction motion. Doc. #16-4. Because the judgment did not become final until after Fannings' resentencing and his petition was filed less than a year afterwards, his petition is timely. *See McKinley v. Cain*, No. 12-2631, 2013 WL 5506123, at *6 (E.D. La. 2013) (for purposes of § 2244 statute of limitations, judgment did not become final until the defendant's last resentencing following state post-conviction challenges).

### B. Exhaustion and Procedural Default

In his second ground for relief, Fannings alleges that the State's witness, Chavon Mack, confessed to the murder for which he was convicted and "produced no evidence, no human remains, nor crime scene" to support his conviction. Doc. #1 at 3. Similarly, in his third ground for relief, Fannings challenges the sufficiency of the evidence, alleging that he was "convicted of murder on here say [sic] and a promise made by the [trial judge]." *Id.* In his ineffective assistance of counsel ground, Fannings challenges, among other things, his trial counsel's failure to object to irrelevant testimony. *Id.* at 4. The State argues that Fannings failed to raise each of these claims in the state's highest court, rendering such claims unexhausted and procedurally barred. Doc. #16 at 12–15.

> [A federal court] may not grant habeas relief to a state prisoner unless the applicant has exhausted the remedies available in the courts of the State or state process is absent or ineffective. The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court.

---

[6] Doc. #17-7 at PageID 981.

*Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019) (cleaned up). A claim is said to be procedurally defaulted if it has not been exhausted "and the state court to which the prisoner would have to present his claim[] in order to exhaust [it] would find the claim[] procedurally barred." *Kittelson v. Dretke*, 426 F.3d 306, 315 (5th Cir. 2005). To be valid, a procedural bar must be "adequate," that is, "strictly or regularly followed by the cognizant state court" and "independent" of federal law. *Fratta v. Davis*, 889 F.3d 225, 228 (5th Cir. 2018).

> If a claim is merely unexhausted but not procedurally defaulted, then, absent waiver by the state, a district court must either dismiss the federal petition or stay the federal proceeding while the petitioner exhausts the unexhausted claim in state court. But if a claim is both unexhausted and procedurally defaulted, then a district court may deny the federal petition outright.

*Norman v. Stephens*, 817 F.3d 226, 231 n.1 (5th Cir. 2016). However, dismissal based on procedural default is improper if a habeas petitioner can "show cause for the default and actual prejudice, or that a miscarriage of justice will occur if the federal court does not consider the claim." *Gonzales v. Davis*, 924 F.3d 236, 242 (5th Cir. 2019). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up). To establish prejudice, the petitioner must demonstrate that "but for the error, he might not have been convicted." *Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003). "And a miscarriage of justice in this context means that the petitioner is actually innocent of the crime of which he was convicted." *Gonzales*, 924 F.3d at 242.

Fannings challenged the sufficiency of the evidence in his appeal. *See* Doc. #17-8 at PageID 1076. After the Mississippi Court of Appeals affirmed his conviction, Fannings did not timely request rehearing in the Mississippi Court of Appeals or seek review in the Mississippi Supreme Court. As such, his claims regarding the weight and sufficiency of the evidence are

unexhausted. And although Fannings raised challenges regarding ineffective assistance of counsel, the record does not show that he previously raised claims regarding his trial counsel's failure to object to irrelevant testimony to any state court. Thus, these claims are unexhausted.

Furthermore, because any attempt to return to state court would be barred based on Mississippi Code § 99-39-23(6)'s prohibition on successive petitions, which the Fifth Circuit has found to be an independent and adequate state bar, Fannings' claims are deemed procedurally defaulted. *See Chancellor v. Mississippi*, 129 F. App'x 878, 879–80 (5th Cir. 2005) (claims procedurally barred when unexhausted are subject to Miss. Code Ann. § 99-39-23(6)). Thus, in order to obtain habeas review of his defaulted claims, Fannings must demonstrate cause for the default and actual prejudice as a result, or that a failure to consider his claims would result in a fundamental miscarriage of justice.

Fannings does not present any argument regarding the cause of the default and because he has not established cause, the Court need not consider whether there is "actual prejudice." *See Hughes v. Quarterman*, 530 F.3d 336, 343 (5th Cir. 2008) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."). He further has failed to show that failure to consider these claims would result in a fundamental miscarriage of justice because he has not shown he did not commit the crime of conviction nor has he identified any new, reliable evidence to support his claims.[7] *See Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999). Thus, these grounds are not cognizable for federal habeas review and are properly dismissed.

---

[7] Fannings submitted articles regarding the trial and the search for the victim's remains; docket reports from the state court proceedings; an article detailing Mack's 2012 arrest; a document listing "possible" relatives, phones, social profiles, and vehicles connected to the victim; and his Internal Revenue Service "Wage and Income Transcript" for 2003, 2004, and 2005. Docs. #19-1, #21, #27, #30. None of these documents show that he did not commit the crime of conviction.

9

## IV
## Merits Review

Except in those rare instances when exhaustion of state remedies is excused, 28 U.S.C. § 2254 "does not permit a federal court to grant a habeas application unless the applicant can show legal error under § 2254(d)(1) or factual error under § 2254(d)(2)." *Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012).

"To establish factual error …, the applicant must show that the state court adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* (internal quotation marks omitted). To establish legal error, "the applicant must show that the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* (internal quotation marks omitted). The phrase "clearly established Federal law" "refers to the holding, as opposed to the dicta, of [Supreme] Court[] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Necessarily, "circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court." *Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) (internal quotation marks omitted).

A decision is contrary to clearly established federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law;" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to that Supreme Court decision." *Sprouse v. Stephens*, 748 F.3d 609, 616 (5th Cir. 2014) (internal alterations omitted). The decision involves an unreasonable application of Supreme Court precedent if (1) "the state court unreasonably applies the correct governing legal rule to the facts of the particular case;" (2) "the state court unreasonably extends

10

a legal principal from [Supreme Court] precedent to a new context where it should not apply;" or (3) "the state court unreasonably refuses to extend that principle to a new context where it should apply." *Id.* (cleaned up).

### A. Judicial Bias

In his first ground for relief, Fannings argues that "after the jury returned a guilty verdict [the trial judge] walked up to the family and said to them, 'I told you I would get you justice in the South,'" and this "implys [sic] that there had been prior unauthorized contact + communication with witnesses and [the judge]." Doc. #1 at 2. The State argues Fannings is not entitled to relief on this ground because "[h]e has presented no evidence of actual bias, and the record is void of any circumstances where such bias could even be reasonably inferred, despite Petitioner's assertion to the contrary." Doc. #16 at 27.

> Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial. However, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. A likelihood or appearance of bias can disqualify a judge as well.

*Bunton v. Quarterman*, 524 F.3d 664, 672 (5th Cir. 2008) (cleaned up). "General allegations of bias or prejudice are insufficient to establish a constitutional violation." *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008).

"In general, the Supreme Court has recognized 'presumptive bias' as the one type of judicial bias other than actual bias that requires recusal under the Due Process Clause." *Id.* at 475. "[I]t is only *clearly established* by Supreme Court precedent that presumptive bias exists in … three circumstances:"

11

> (1) when the judge has a direct personal, substantial, and pecuniary interest in the outcome of the case, (2) when he has been the target of personal abuse or criticism from the party before him, and (3) when he has the dual role of investigating and adjudicating disputes and complaints.

*Id.* at 475–76 (cleaned up).

Fannings has not presented any evidence of actual bias on the part of the trial judge. Further, nothing in the record indicates that the trial judge had a personal interest in the outcome of the case,[8] that he was the target of abuse or criticism from the parties, or that he had a dual role of investigating and adjudicating the dispute. Thus, Fannings has failed to show he is entitled to federal habeas relief on this ground.

### B. Miscarriage of Justice

In his fourth ground for relief, Fannings alleges that he "suffered a miscarriage of justice" because the trial judge denied a motion to continue, "wouldn't allow [his] hired counsel time to gather evidence in [his] favor and … illegally sentenced [him] maliciously and denied [him] of a new trial." Doc. #1 at 4. To the extent Fannings challenges the trial judge's alleged bias, this ground is duplicative of Ground One and properly dismissed for the same reasons. "To the extent [Fannings] makes an argument regarding the 'cumulative effect' of the alleged errors by the judge at his trial in Ground Four," the State argues such argument is unexhausted[9] and, because "no merit can be found in any of [his] claims[,] … no support to the cumulative error charge exists." Doc. #16 at 28.

---

[8] To the extent Fannings relies on a statement that the judge made a comment regarding the outcome of the trial to the family after the case concluded, such is not sufficient to establish bias. *See Buntion*, 524 F.3d at 674–75 (trial judge's comment that "he was doing 'God's work' in seeing the defendant executed and that [the defendant] would eventually be found guilty" was not grounds for habeas relief because "Supreme Court case law does not clearly establish bias" in such a situation).

[9] Because "habeas applications may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State," the Court does not consider whether Fannings has exhausted this claim. *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012).

"The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (cleaned up). However, errors that are procedurally barred may not be considered in the cumulative error analysis. *Murphy v. Davis*, 901 F.3d 578, 598–99 (5th Cir. 2018). When a court finds the alleged errors are without merit, "there is nothing to accumulate and the doctrine has no applicability." *Id.* (internal quotation marks omitted). Because all of the other grounds Fannings raises in his petition are either procedurally defaulted or without merit as discussed in this opinion, he is not entitled to relief based on cumulative error.

### C. Ineffective Assistance

In his ineffective assistance of counsel ground, Fannings alleges that his trial counsel "ha[d] no defense[,] fail[ed] to object to irrelevant testimony and advised [him] not to testify on his own behalf."[10] Doc. #1 at 4. The State argues that because the Mississippi Supreme Court found Fannings failed to make the required showing under *Strickland v. Washington*, 466 U.S. 668 (1984), and the decision did not involve an unreasonable application of the law, Fannings is not entitled to relief. Doc. #16 at 30–32.

"Under *Strickland* …, [a petitioner] must show that counsel's performance was [1] objectively unreasonable and [2] prejudiced him." *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (internal quotation marks omitted). "To prove prejudice, it is not enough that the errors have some conceivable effect on the outcome of the proceeding. Instead, there must be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

---

[10] As discussed above, the Court determined Fannings' claim based on trial counsel's failure to object to irrelevant testimony is procedurally defaulted.

13

would have been different." *Id.* at 433 (cleaned up). To grant a petitioner federal habeas relief when the state court has previously addressed the grounds asserted and found them without merit, the state court's application of *Strickland* must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for reasonable disagreement." *Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021) (internal quotation marks omitted).

Here, Fannings has failed to satisfy the requirements of *Strickland* with respect to his counsel's failure to call witnesses. Such claims "are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). Thus, to establish such a claim, Fannings must "demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense." *Id.* (cleaned up). Fannings has failed to make such a showing and thus is not entitled to relief on this ground.

Fannings' argument that his counsel advised him not to testify on his own behalf also fails under *Strickland*. "A defendant has a fundamental constitutional right to testify [and a] waiver of this right must be knowing and voluntary, and it must be made by the defendant rather than his counsel." *Roddy v. Vannoy*, 671 F. App'x 295, 296 (5th Cir. 2016) (citing *Rock v. Arkansas*, 483 U.S. 44, 49–52 (1987) and *Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1998)). Fannings has not presented any evidence that he wished to testify at trial and that his counsel prevented him from doing so. In fact, the record reflects that at trial, Fannings "indicated [to counsel] that he cho[se] not to testify" and after being informed by the judge of his right to testify, Fannings

14

confirmed that he "d[id] not wish to testify." Doc. #17-5 at PageID 813–14. In the absence of any evidence that Fannings expressed to his counsel his desire to testify and was prevented from doing so, he cannot establish that his counsel's advice was error and therefore is not entitled to relief on this ground. *See United States v. Mullins*, 315 F.3d 449, 455 (5th Cir. 2002) (petitioner satisfied first prong of *Strickland* where evidence showed that he expressed his desire to testify to counsel but "counsel alone chose to prevent his testimony").

### D. Parole Eligibility

In his ground regarding parole eligibility, Fannings challenges MDOC's failure to provide him with a parole date following his resentencing. Doc. #9. The State argues that Fannings has failed to state a claim for federal habeas relief with respect to his parole eligibility because he "does not have a constitutionally recognized liberty interest in parole due to the discretionary nature of Mississippi's parole system." Doc. #16 at 11.

"Federal habeas relief cannot be granted unless the petitioner alleges that he has been deprived of some right secured to him by the United States Constitution or the laws of the United States." *Teague v. Quarterman*, 482 F.3d 769, 773 (5th Cir. 2007) (internal quotation marks omitted). Fannings does not identify which constitutional rights he alleges have been violated by the denial to provide him with a parole date. The Court presumes though that he alleges a violation of the Due Process Clause.

"The procedural protections of the due process clause are triggered only where there has been a deprivation of life, liberty, or property." *Toney v. Owens*, 779 F.3d 330, 336 (5th Cir. 2015). Where, as here, a prisoner's life and property are not at stake, "the threshold question is whether he had a liberty interest that the prison action implicated or infringed." *Id.* (internal quotation marks omitted). "State laws … may create liberty interests protected by the Due Process Clause.

15

In those situations, federal due process law sets the minimum procedures that are required before the state can deprive a person of that liberty interest." *Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 312 (5th Cir. 2014) (internal citation omitted). When state law provides an inmate with a means for earlier release, a liberty interest in that program will arise when entitlement is "mandatory." *Id.* When entitlement is discretionary (or there is no entitlement at all), there will be no liberty interest. *Id.* at 312–13.

"Parole … is discretionary in Mississippi, so prisoners in the state have no liberty interest in parole." *Id.* at 312. Thus, Fannings does not have a liberty interest in obtaining parole and "the discretionary nature of the state's parole system ends the federal due process inquiry." *Id.* at 313.

### E. Administrative Errors

In the second amendment to his petition, Fannings challenges the "questionable and … unjustifiable" conduct of the Circuit Court in a civil action he filed against Cheryl Webster. Doc. #13. Fannings again fails to identify what constitutional rights he alleges were denied in this ground. The State argues that although Fannings has not exhausted such claims, his "claims in Ground Seven regarding alleged administrative errors made by the circuit clerk in a pending civil suit should be dismissed with prejudice for failure to state a cognizable claim on federal *habeas* review" because "relief is available only to remedy constitutional errors at the trial or direct review level." Doc. #16 at 12 & n.9. The Court agrees. Because Fannings seeks to challenge a separate, albeit related, state court civil action rather than his underlying conviction, he has not stated a claim for federal habeas relief. *See Hill v. McDonough*, 547 U.S. 573, 579 (2006) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus."); *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) (a court "must find constitutional error at the trial or direct review level in order to issue the writ").

# V
# Remaining Motions

The Court construes Fannings' "Motion of Declaration," Doc. #37, as an attempt to further amend his petition but because it does not add anything of substance to his claims, it is properly denied for the same reasons earlier articulated by Judge Virden. *See* Doc. #22. To the extent the motion is an attempt to add a ground challenging the validity of his arrest, because it does not appear Fannings raised this issue at any time in the state courts, it is unexhausted and procedurally barred as discussed above. Further, because Fannings has not shown that he was denied an opportunity to challenge the validity of his arrest in advance of his trial, it is not a proper ground for habeas relief. *See Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) ("If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, *Stone v. Powell* [428 U.S. 465 (1976)] bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.").

With respect to Fannings' request in his motion for preliminary relief that he be moved to the Bolivar County Regional Correctional Facility pending a ruling on his habeas petition, Doc. #40 at 5, he cites no authority to support such request. Regardless, since the Court has found his habeas petition is without merit, his request to be moved pending such decision is now moot.[11]

# VI
# Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Cases in the United States District Court requires a court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability ("COA") will issue "only if the applicant has made a

---

[11] To the extent Fannings seeks to challenge his conditions of confinement, such is properly brought in a civil action pursuant to 42 U.S.C. § 1983 rather than in a petition for habeas relief. *Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) ("[A] civil rights suit pursuant to 42 U.S.C. § 1983 for a state prisoner … is the proper vehicle to attack unconstitutional conditions of confinement and prison procedures.") (internal quotation marks omitted).

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA on a claim rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Id.* Based on the *Slack* criteria, the Court finds that a COA should not issue in this case.

## VII
## Conclusion

Fannings' petition for a writ of habeas corpus [1] is **DENIED**. A certificate of appealability is **DENIED**. Fannings' pending motions [37][40] are **DENIED**. A final judgment will issue separately.

**SO ORDERED**, this 10th day of February, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

18